OPINION JOURNAL ENTRY
{¶ 1} On December 30, 2002, this Court issued an Opinion and Journal Entry affirming the decision of the trial court in the underlying case. On January 9, 2003, Cross-Appellant Kathy Myers filed a timely application for reconsideration from that decision claiming that not all of the issues presented in her merit brief were fully addressed by this court.
 {¶ 2} Applications for reconsideration may be made pursuant to App. R. 26(A). While the rule provides the procedure for such application, it is devoid of any standard a court should use on review. Such standard has evolved through caselaw, however, and is best expressed in the syllabus to Columbus v. Hodge (1987), 37 Ohio App.3d 68, 523 N.E.2d 515:
 {¶ 3} "1. The test generally applied upon the filing of a motion for reconsideration in the court of appeals is whether the motion calls to the attention of the court an obvious error in its decision, or raises an issue for consideration that was either not considered at all or was not fully considered by the court when it should have been. (Matthews v.Matthews [1981], 5 Ohio App.3d 140, 5 OBR 320, 450 N.E.2d 278, followed.)"
 {¶ 4} In order to prevail in its application, a party seeking reconsideration must raise one of the three errors in its application and support the request with the necessary portions of the appellate record. An application for reconsideration may not be filed simply on the basis that a party disagrees with the logic used by the appellate court or the conclusions it reached. State v. Owens (1996), 112 Ohio App.3d 334,678 N.E.2d 956.
 {¶ 5} Myers argued in her direct appeal, somewhat indirectly as it was not assigned as error, that it was a violation of her equal protection rights to differentiate between employees employed by self-insured employers and those employed by state fund employers when analyzing R.C. 4123.65. Myers argued that no reasonable grounds exist for making a distinction between these two classes of employees with regard to the cooling off period.
 {¶ 6} The Fourteenth Amendment to the United States Constitution
provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Article I, Section 2 of the Ohio Constitution states that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *" Article I, Section 2 of the Ohio Constitution "is the functional equivalent of the Equal Protection Clause of theFourteenth Amendment to the United States Constitution." State ex rel. DaytonFraternal Order of Police Lodge No. 44 v. State Emp. Relations Bd. (1986), 22 Ohio St.3d 1, 6, 488 N.E.2d 181.
 {¶ 7} The standard for determining whether a statute violates equal protection is "essentially the same under state and federal law." (Fabrey v. McDonald Village Police Dept [1994], 70 Ohio St.3d 351,639 N.E.2d 31), supra, at 353, 639 N.E.2d at 33. "Under a traditional equal protection analysis, class distinctions in legislation are permissible if they bear some rational relationship to a legitimate governmental objective. Departures from traditional equal protection principles are permitted only when burdens upon suspect classifications or abridgements of fundamental rights are involved." State ex rel. Vana v.Maple Hts. City Council (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909,911, citing Clements v. Fashing (1982), 457 U.S. 957, 963,102 S.Ct. 2836, 2843-2844, 73 L.Ed.2d 508, 516. Under rational-basis scrutiny, legislative distinctions are invalid only if they bear no relation to the state's goals and no ground can be conceived to justify them. Fabrey
at 353, 639 N.E.2d at 33.
 {¶ 8} Myers now claims in her motion for reconsideration that this court made no reference to that argument in our original opinion. Admittedly, this court did not explicitly state there had been no equal protection violation. However, we did explain why the thirty-day cooling off period applied to the one class of employees but not the other. "There is a further distinction between matters involving a state-funded employer and a self-insured employer. When an appeal involves astate-funded employer, the Administrator of the Bureau of Workers'Compensation is a direct party. However, when an appeal involves aself-insured employer, the Administrator is not a direct party. Ifappellant's position is adopted, the Administrator could potentially enterinto a settlement agreement and then be required to submit such agreementto itself for approval." Id. at ¶ 18. (Emphasis sic.)
 {¶ 9} We further explained, "In the present case, in direct contrast to a self-insured employer case, the Bureau was a direct party to the case. When the settlement agreement was negotiated, all parties with an interest in the outcome of the case were present before the trial court. The administrative review was conducted at the time the settlement offer was made by the Bureau. Thus, we conclude the thirty-day cooling off period would be unnecessary and find our decision in Macek to be controlling. Myers is therefore not entitled to the thirty-day cooling off period pursuant to R.C. 4123.65." Id. at ¶ 23.
 {¶ 10} Although not specifically discussed within a constitutional framework, we concluded in our original decision there existed a rational basis for the two classes of employees to be treated differently by the legislature. We specifically hold it is not violative of equal protection to differentiate between self-insured and state-funded employees when interpreting the applicability of the cooling off period set forth in R.C. 4123.65. This is consistent with distinctions the worker's compensation statutory scheme sometimes makes between the two classes of employees.
 {¶ 11} For these reasons, Myers' application for reconsideration is denied our decision to affirm the trial court's decision remains unchanged.
Waite, P.J., Vukovich and DeGenaro, JJ., concur.